**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
AMY GAGNON,                                                  :
                                                            :   Civil Action No.:
                                        Plaintiff,          :
                                                            :
                        v.                                  :   **COMPLAINT**
                                                            :
DOUGLAS ELLIMAN LLC, JSELIGMAN, INC.                        :
and JARED SELIGMAN, in his individual and                   :   **Jury Trial Demanded**
professional capacities,                                    :
                                                            :
                                        Defendants.         :
---------------------------------------------------------------X

Plaintiff Amy Gagnon ("Plaintiff"), by and through her undersigned counsel, Wigdor

LLP, as and for the Complaint in this action against Defendants Douglas Elliman LLC

("Elliman" or the "Company"), JSeligman, Inc. and Jared Seligman (together with Elliman, the

"Defendants"), hereby states and alleges as follows:

<u>PRELIMINARY STATEMENT</u>

1.     To act as a Personal Assistant to a wealthy real estate broker, especially in New

York City, means putting up with indignities that most people never have to experience.

2.     As such, when Ms. Gagnon applied for a listing through Elliman to be Mr.

Seligman's assistant, she knew that she would be taking a step backwards professionally, and

working long hours performing various personal errands and other tasks for Mr. Seligman.  None

of this dissuaded Ms. Gagnon from accepting the position, however, as she believed that

whatever indignities she faced would be worthwhile as she would not only be able to establish a

foothold in the highly competitive real estate business, but would be able to learn at one of the

largest real estate firms in New York City and from one of the Company's most successful

brokers.

3.      What Ms. Gagnon did not know, and could not possibly anticipate, is that the price she was asked to pay in exchange for this experience would require her to partake in the sexual predilections and illegal activity of her boss.

4.      By way of example only, Mr. Seligman made it clear that he expected Plaintiff to facilitate his drug habit, as he demanded that Ms. Gagnon assist him in finding and purchasing drugs over her strenuous objections.

5.      As if being forced to partake in Mr. Seligman's illegal habits was not enough, Mr. Seligman also required Ms. Gagnon to participate in his sexual perversions, having loud sexual intercourse and telling another man, "**I want your dick in my face**," all while forcing Ms. Gagnon to be present, ostensibly so that she could perform "work" for him.

6.      Incredibly, despite all of this, Ms. Gagnon continued to perform her job for Defendants, working around the clock to cater to Mr. Seligman's whims, routinely working 12-hour days and making herself available when an intoxicated Mr. Seligman would call her past midnight and ask her to take care of the needs of his friends.

7.      Defendants proceeded to reward Ms. Gagnon's commitment by denying her the overtime compensation that she had been guaranteed at the start of her employment and by eventually terminating her employment when she complained about being the victim of unlawful sexual harassment and explained that no amount of experience was worth the degradation to which Mr. Seligman subjected her.

## NATURE OF THE CLAIMS

8.      This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress unlawful employment practices committed by Defendants against Ms. Gagnon, including Defendants' sexual harassment of Ms. Gagnon, as well as unlawful

retaliation committed against Ms. Gagnon due to her complaints of discrimination, in violation of the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq*. ("NYSHRL") and the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 *et seq*. ("NYCHRL").  This action is also brought to address the unlawful failure of Defendants to pay Ms. Gagnon overtime compensation for all hours worked in excess of 40 hours a week in violation of the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* (the "FLSA") and the New York Labor Law, §§ 190 *et. seq.* ("NYLL").

## ADMINISTRATIVE PROCEDURES

9.      Plaintiff intends to file a charge of discrimination on behalf of herself with the Equal Employment Opportunity Commission, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").  The charge will arise from the same facts alleged herein.

10.     Following her receipt of a Notice of Right to Sue, Plaintiff will seek leave to file an Amended Complaint to include claims under Title VII.

11.     Following commencement of this action, a copy of this Complaint will be served on both the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

12.     Any and all other prerequisites to the filing of this suit have been met.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights

under the FLSA.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

14.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants Elliman and JSeligman, Inc. have headquarters located within the Southern District of New York and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

15.    Plaintiff Amy Gagnon is a female former Personal Assistant employed by Defendants.  Ms. Gagnon was terminated from her position as a Personal Assistant on or about December 9, 2016.  She is a citizen of the United States and a citizen of the State of New York. At all relevant times, Ms. Gagnon met the definition of an "employee" and/or "eligible employee" under all applicable statutes.

16.    Defendant Douglas Elliman LLC is the largest real estate company in New York, with its headquarters located at 575 Madison Avenue, New York, New York 10022.  At all relevant times, Defendant Douglas Elliman LLC met the definition of "employer" and/or "covered employer" under all relevant statutes.

17.    Defendant JSeligman, Inc. is a New York Company that is a subdivision of Elliman.  Upon information and belief, JSeligman, Inc. is licensed to do business in the State of New York, with its headquarters located at 575 Madison Avenue, New York, New York 10022. At all relevant times Defendant JSeligman, Inc. met the definition of "employer" and/or "covered employer" under all relevant statutes.

18.    Defendant Jared Seligman is a Licensed Associate Real Estate broker for Elliman who lives and works in New York City.  Mr. Seligman directly supervised Ms. Gagnon from in and around May 2016 until her termination on or about December 9, 2016, and directly had

4

authority over the terms and conditions of Ms. Gagnon's employment.  In this position, Mr. Seligman was a direct participant in the discriminatory policies and practices to which Ms. Gagnon was subjected.  At all relevant times, Mr. Seligman met the definition of "employer" and/or "covered employer" under all relevant statutes.

<u>**FACTUAL ALLEGATIONS**</u>

<u>**Background**</u>

19.     In or around May 2016, Ms. Gagnon was hired by Defendants to be Mr. Seligman's Personal Assistant.

20.     When Ms. Gagnon began her employment with Defendants, she signed a compensation agreement which stated that should she work in excess of "a regular 40-hour work week," she "will be paid overtime in accordance with New York State law."

21.     Throughout her employment, Ms. Gagnon worked out of Elliman's main office at 575 Madison Avenue where she would receive calls that came into the main Elliman office phone line and had a desk and computer where she regularly performed her job duties.

22.     Ms. Gagnon also picked up packages for Mr. Seligman from the receptionists at Elliman and was provided with an Elliman e-mail address from which she routinely sent and received work-related e-mails at Mr. Seligman's direction.

<u>**Mr. Seligman's Repeated Harassing Conduct Towards Ms. Gagnon**</u>

23.     Throughout her employment with Defendants, Ms. Gagnon performed her job professionally.  In keeping with her primary role as Mr. Seligman's Personal Assistant, she performed several personal and professional errands for him.

24.     By way of example only, Ms. Gagnon was tasked by Mr. Seligman with managing his finances, including paying his bills, signing his personal and business checks, arranging his appointments and picking up his packages.

25.     Ms. Gagnon also assisted Defendants with work related to the operations of the real estate business, helping set up open houses and traveling to arrange showings.

26.     However, it quickly became clear to Ms. Gagnon that being Mr. Seligman's assistant would require her to submit to the behavior of a man who had no concern about the bounds of professional conduct or even the law.

27.     Within weeks of beginning her employment, Mr. Seligman attempted to strong arm Ms. Gagnon into helping support his drug habit, asking her to find and purchase drugs for his use, despite her objections about how abhorrent she found such behavior.

28.     Even when she refused, Mr. Seligman would ignore her protests and force her to pick up packages containing drugs from his doorman in exchange for cash that she had to withdraw from her own account.

29.     Not only was this conduct outrageous, Ms. Gagnon was adamant that she found Mr. Seligman's efforts to make her complicit in his legal activity to be unacceptable.

30.     Unfortunately, Mr. Seligman soon made it clear that not only did he expect her to facilitate his drug habit, but that he also required her to be a participant in his sexual proclivities as well.

31.     On another occasion, Mr. Seligman required Ms. Gagnon to work from his home apartment.  Unbeknownst to her, Mr. Seligman had scheduled his personal physician to come over for his Botox injections.

32.     While Ms. Gagnon looked on with horror, Mr. Seligman openly leered at the doctor, telling him, "**I want your dick in my face**" and "**Oooooh you're so sexy, I want to stick my finger up your butt**."

33.     Mr. Seligman then began to roughly grope the doctor in front of Ms. Gagnon, grabbing his crotch.

34.     Ms. Gagnon soon realized that this type of conduct was not an isolated incident but part of the pervasive sexual harassment which Mr. Seligman believed that all his assistants would have to endure if they wished to work with him.

35.     Within weeks of the incident with the doctor, Mr. Seligman again required Ms. Gagnon to work out of his personal apartment.

36.     Shortly after Ms. Gagnon arrived, a strange man that she had never met came over and he and Mr. Seligman retreated to the bedroom adjacent to where Ms. Gagnon was attempting to work.

37.     The two men then engaged in loud and unmistakable sexual intercourse.  Given the size of the room and the fact that only a thin wall separated Ms. Gagnon from the sounds of the two men having raucous sexual intercourse, there was no question that Mr. Seligman both knew that Ms. Gagnon could hear him having sex and *wanted* her to do so.

38.     In fact, Mr. Seligman left little doubt about his intentions when, shortly after the other man left, Mr. Seligman came out of his room wearing nothing but his bathrobe and smirked at Ms. Gagnon.

39.     Incredibly, he then instructed her that she had to remain in the apartment for the remainder of the day, despite what he had just forced her to endure, demonstrating a complete disregard for Ms. Gagnon.

40.     Unsurprisingly, given the level of wanton behavior to which Mr. Seligman subjected Ms. Gagnon, several of Mr. Seligman's other assistants, including those who worked directly for Elliman, also complained about being subject to sexual harassment and other unlawful behavior, including lewd comments and inquiries about their sex lives in graphic detail.

**Defendants' Failure to Pay Ms. Gagnon Overtime**

41.     Even in the face of this pervasive and repeated harassment, Ms. Gagnon nevertheless continued to devote herself to her job.

42.     Ms. Gagnon would routinely work in excess of 12 hours a day, renting cars and traveling throughout New York for real estate showings and client pitches, often not returning home until well past midnight.

43.     Ms. Gagnon was also expected to make herself available late into the night to answer phone calls from a clearly intoxicated Mr. Seligman, asking her to make arrangements for friends of his, which would in turn require Ms. Gagnon to spend hours on the phone with various concierges and hotels around the country.

44.     Despite all of this, Defendants flatly refused to pay Ms. Gagnon *any* overtime, ignoring both the law and the requirements set forth in the compensation agreement they themselves gave Ms. Gagnon at the outset of her employment.

45.     Additionally, Ms. Gagnon was not paid at all for the hours that she worked in excess of 40 hours a week, meaning that she worked dozens of hours each week for zero compensation.

**Defendants Retaliate Against Ms. Gagnon for Engaging in Protected Activity**

46.     Though Ms. Gagnon remained able and willing to perform her job in the face of both Defendants' rampant sexual harassment and their failure to pay her the wages to which she was entitled, she nevertheless could not allow this unlawful behavior to remain unaddressed.

47.     Accordingly, on or about December 5, 2016, Ms. Gagnon sent a letter to Defendants informing them that the conduct that they were engaging in constituted both sexual harassment and violations of federal and state wage-and-hour laws.

48.     Within hours, Defendants began retaliating against her, informing her that she would be thereafter barred from Elliman's offices.

49.     The very next day, Defendants escalated their retaliatory behavior by cutting off Ms. Gagnon's access to her Elliman e-mail account which she regularly checked and used for work purposes.

50.     As a result of this retaliatory behavior, the terms of Ms. Gagnon's employment were unquestionable adversely affected.  Rather than having access to her computer, phone and e-mail, all of which she had routinely and customarily used to perform her job, she was now being isolated by Defendants, with no legitimate basis.

51.     Subsequently, Ms. Gagnon again complained about the retaliation she was experiencing.  In response, Defendants terminated her employment on December 8, 2016.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Violation of the FLSA: Overtime Wages)**
***Against All Defendants***

52.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

53.     At all relevant times, Defendants have been and continue to be "employers" engaged in commerce and/or the production of goods for commerce, within the meaning of and at revenue levels sufficient for coverage under the FLSA, 29 U.S.C. § 203.

54.     At all relevant times, Plaintiff was employed by Defendants as an "employee," within the meaning of the FLSA, 29 U.S.C. § 203.

55.     Plaintiff consents to sue in this action pursuant to 29 U.S.C. § 216.

56.     The FLSA requires covered employers, such as Defendants, to compensate all non-exempt employees at a rate not less than one and one-half times their regular rate of pay for all work performed in excess of 40 hours in a workweek.

57.     Plaintiff was not exempt from the requirement that her employer pay her overtime compensation under the FLSA, and she is entitled to be paid overtime compensation by Defendants for all overtime hours worked during the three years prior to the filing of this action (the "FLSA Period").

58.     At all times during the FLSA Period, Defendants have refused to pay Ms. Gagnon overtime pay for her hours worked in excess of 40 hours in a workweek.

59.     As a result of Defendants' failure to compensate Plaintiff at a rate not less than one and one-half times her regular rate of pay for all work performed in excess of 40 hours in a workweek, the Company has violated the FLSA, 29 U.S.C. § 207(a)(1).

60.     As a result of Defendants' failure to maintain accurate and complete records of the hours worked by Plaintiff, the Company also has violated the FLSA.

61.     The foregoing conduct of Defendants, as alleged, constitutes willful violations, within the meaning of the FLSA, 29 U.S.C. § 255(a).

62.     Defendants' violations of the FLSA have significantly damaged Plaintiff and entitle her to recover overtime wages, an additional equal amount in liquidated damages and attorneys' fees and costs.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Violation of the NYLL: Overtime Wages)**
***Against All Defendants***

63.     Plaintiff hereby repeats and re-alleges each and every allegation in the above paragraphs, inclusive, as if fully set forth herein.

64.     Pursuant to regulations issued by the State Commissioner of Labor, 12 N.Y.C.R.R. § 142-2.2, an employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate of pay in the manner and methods provided in the FLSA.

65.     Pursuant to NYLL § 663, an employer who fails to pay overtime shall be liable for the amount of any underpayments, attorneys' fees and costs.

66.     Plaintiff was not exempt from the requirement that her employer pay her overtime compensation under the NYLL, and she is entitled to be paid overtime compensation by Defendants for all overtime hours worked during the six years before the filing of this action (the "NYLL Period").

67.     At all times during the NYLL Period, Defendants have refused to pay Plaintiff her overtime pay for her hours worked in excess of 40 hours in a workweek.

68.     As a result of Defendants' failure to compensate Plaintiff at a rate not less than one and one half-times the regular rate of pay for all work performed in excess of 40 hours in a workweek, Defendants have violated the NYLL and 12 N.Y.C.R.R. § 142-2.2.

69.     As a result of Defendants' failure to maintain accurate and complete records of the hours worked by Plaintiff, the Company also has violated the NYLL.

70.     The foregoing conduct of the Company, as alleged, constitutes willful violations, within the meaning of the NYLL.

71.     The Company's violations of the NYLL have significantly damaged Plaintiff, entitling her to recover the total amount of unpaid overtime compensation, an additional equal amount in liquidated damages and attorneys' fees and costs.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(FLSA Minimum Wage Violations)**
***Against All Defendants***

72.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

73.     The FLSA requires covered employers, such as Defendants, to pay all non-exempt employees the prevailing minimum wage for all hours worked.  Plaintiff was not exempt from the requirement that Defendants pay her the prevailing minimum wage under the FLSA.

74.     During the FLSA Period, Defendants did not pay Plaintiff the prevailing minimum wage for all hours worked for Defendants.

75.     As a result of Defendants' failure to pay Plaintiff the prevailing minimum wage for all hours worked, Defendants violated the FLSA.

76.     The foregoing conduct of Defendants constitutes willful violations of the FLSA.

77.     Defendants' violations of the FLSA have significantly damaged Plaintiff and entitle her to recover the total amount of her unpaid minimum wages, an additional equal amount in liquidated damages and attorneys' fees and costs.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(NYLL Minimum Wage Violations)**
***Against All Defendants***

78.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

79.     The NYLL requires covered employers, such as Defendants, to pay all non-exempt employees the prevailing minimum wage for all hours worked.  Plaintiff was not exempt from the requirement that Defendants pay her the prevailing minimum wage under the NYLL.

80.     Defendants did not pay Plaintiff the prevailing minimum wage for all hours worked for Defendants during her employment.

81.     As a result of Defendants' failure to pay Plaintiff the prevailing minimum wage for all hours, Defendants violated the NYLL.

82.     The foregoing conduct of Defendants constitutes willful violations of the NYLL.

83.     Defendants' violations of the NYLL have significantly damaged Plaintiff and entitle her to recover the total amount of her unpaid minimum wage, an additional amount in liquidated damages and attorneys' fees and costs.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (NYLL § 191 *et seq.* Violations for Failure to Pay Wages)
#### *Against All Defendants*

84.     Plaintiff, on behalf of herself and the NYLL Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

85.     The NYLL requires covered employers, such as Defendants, to pay employees for the wages with the requisite frequency in accordance with their agreed upon terms of employment.  Plaintiff was not exempt from the requirement that Defendants pay her for all wages earned in accordance with her agreed terms of employment under the NYLL.

86.     Defendants did not pay Plaintiff her wages earned in accordance with her agreed terms of employment, and did not pay Plaintiff wages earned for all hours worked.

87.     As a result of Defendants' failure to pay Plaintiff her wages earned in accordance with her agreed terms of employment, Defendants violated the NYLL.

88.     The foregoing conduct of Defendants constitutes willful violations of the NYLL.

89.     Defendants' violations of the NYLL have significantly damaged Plaintiff, and entitle her to recover the total amount of her unpaid wages earned in accordance with her agreed terms of employment, an additional amount in liquidated damages and attorneys' fees and costs.

### <u>AS AND FOR A SIXTH CAUSE OF ACTION</u>
**(Failure to Furnish Accurate Wage Statements in Violation of NYLL § 195)**
***Against All Defendants***

90.     Plaintiff, on behalf of herself and the NYLL Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

91.     The NYLL requires covered employers, such as Defendants, to furnish accurate wage statements to its employees with every payment of wages.  Plaintiff was not exempt from this requirement.

92.     Defendants failed to furnish accurate wage statements to Plaintiff, in violation of NYLL § 195 by, *inter alia*, providing wage statements that inaccurately recorded hours worked and/or wages earned.  As a result, the wage statements furnished by Defendants to Plaintiff contained inaccurate information with respect to wages purportedly paid and hours worked.

93.     The foregoing conduct of Defendants constitutes willful violations of the NYLL and/or its regulations.

94.     Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover damages of one hundred dollars per person affected for each work week that such violations occurred, up to a total of twenty-five hundred dollars per person affected, together with attorneys' fees and costs.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of the FLSA, 29 U.S.C. § 215)
### *Against All Defendants*

95.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

96.     Defendants retaliated against Plaintiff on the basis of her protected activities in violation of the FLSA by, *inter alia*, falsely denigrating her work and professional capabilities, threatening her and ultimately terminating her employment.

97.     Defendants' retaliatory conduct was designed to intimidate and/or dissuade Plaintiff from asserting rights under the FLSA.

98.     As a direct and proximate result of the unlawful retaliatory conduct committed by Defendants, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Retaliation in Violation of the NYLL § 215)
### *Against All Defendants*

99.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

100.    Defendants retaliated against Plaintiff in violation of the NYLL by, *inter alia*, falsely denigrating her work and professional capabilities, threatening her and ultimately terminating her employment.

101.    Defendants' retaliatory conduct was designed to intimidate and/or dissuade Plaintiff from asserting rights under the NYLL.

102.    As a direct and proximate result of the unlawful retaliatory conduct committed by Defendants, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Discrimination in Violation of NYSHRL)
### *Against All Defendants*

103.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

104.    By the actions described above, among others, Defendants sexually harassed Plaintiff in violation of the NYSHRL by subjecting her to severe and pervasive harassment, by denying her the opportunity to work in an employment setting free of unlawful discrimination and sexual harassment and by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

105.    As a direct and proximate result of the unlawful discriminatory conduct committed by Defendants in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

106.    As a direct and proximate result of the unlawful conduct committed by Defendants in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

## AS AND FOR A TENTH CAUSE OF ACTION
### (Retaliation in Violation of NYSHRL)
### *Against All Defendants*

107.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

108.    By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her protected activities in violation of the NYSHRL by, *inter alia*, falsely

denigrating her work and professional capabilities, threatening her and ultimately terminating her employment.

109.    As a direct and proximate result of the unlawful retaliatory conduct committed by Defendants in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

110.    As a direct and proximate result of the unlawful retaliatory conduct committed by Defendants in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION**
**(Aiding and Abetting in Violation of NYSHRL)**
***Against Defendant Seligman***

111.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

112.    By the actions described above, among others, Defendant Seligman knowingly or recklessly aided and abetted and directly participated in the unlawful sexual harassment to which Plaintiff was subjected in violation of the NYSHRL.

113.    As a direct and proximate result of Defendant Seligman's aiding and abetting of unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic damages, mental anguish and emotional distress for which he is entitled to an award of damages.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### (Discrimination in Violation of NYCHRL)
### *Against All Defendants*

114.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

115.    By the actions described above, among others, Defendants sexually harassed Plaintiff in violation of the NYCHRL by subjecting her to severe and pervasive harassment, by denying her the opportunity to work in an employment setting free of unlawful discrimination and sexual harassment and by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

116.    As a direct and proximate result of Defendants' unlawful discriminatory and harassing conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

117.    As a direct and proximate result of Defendants' unlawful conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

118.    Defendants' unlawful discriminatory actions constitute malicious, willful and wanton violations of NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
### (Retaliation in Violation of NYCHRL)
### *Against All Defendants*

119.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

120.    By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her protected activities in violation of the NYCHRL by, *inter alia*, falsely denigrating her work and professional capabilities, threatening her and ultimately terminating her employment.

121.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

122.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

123.    Defendants' unlawful retaliatory actions constitute malicious, willful and wanton violations of NYCHRL for which Plaintiff is entitled to an award of punitive damages.

### AS AND FOR A FOURTEENTH CAUSE OF ACTION
**(Aiding and Abetting in Violation of NYCHRL)**
***Against Defendant Seligman***

124.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

125.    By the actions described above, among others, Defendant Seligman knowingly or recklessly aided and abetted and directly participated in the unlawful harassment to which Plaintiff was subjected in violation of the NYCHRL.

126.    As a direct and proximate result of Defendant Seligman's aiding and abetting of unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and

continues to suffer, economic damages, mental anguish and emotional distress for which she is entitled to an award of damages.

127.     Defendant Seligman's unlawful discriminatory actions constitute reckless, malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants for the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York and the City of New York;

B.     An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate Plaintiff for all monetary and/or economic damages;

C.     An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

D.     An award of punitive damages in an amount to be determined at trial;

E.     An award of liquidated damages because Defendants' violations were willful and/or without a good faith basis;

F.     Prejudgment interest on all amounts due;

G.     An award of Plaintiff's reasonable attorneys' fees and costs; and

H.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: May 8, 2017                          Respectfully submitted,
       New York, New York

                                      **WIGDOR LLP**

By: _____
                                    Jeanne M. Christensen
                                    Renan F. Varghese

                                    85 Fifth Avenue
                                    New York, NY 10003
                                    Telephone: (212) 257-6800
                                    Facsimile: (212) 257-6845
                                    jchristensen@wigdorlaw.com
                                    rvarghese@wigdorlaw.com

                                    *Attorneys for Plaintiff*